**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 23, 2024**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-10119-SMR |
| | § | |
| 1001 WL, LLC, | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

| | | |
|---|---|---|
| 1001 WL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADV PROC. 24-01010-SMR |
| | § | |
| TIG ROMSPEN US MASTER MORTGAGE, LP, | § | |
| | § | |
| | § | |
| GALLERIA LOOP NOTE HOLDER, LLC, and | § | |
| | § | |
| | § | |
| BDFI, LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**TIG ROMSPEN US MASTER MORTGAGE, LP'S**
**MOTION FOR SUMMARY JUDGMENT (ECF. NO 28)**

1

The following constitutes the Court's findings of fact and conclusions of law and order granting in part and denying in part TIG Romspen US Master Mortgage, LP's Motion for Summary Judgment filed at ECF No. 28 in Adversary Proceeding 24-01010 (the "Adversary Proceeding").

## I.    INTRODUCTION AND BACKGROUND

1.      On March 11, 2024, 1001 WL, LLC (hereinafter the "Debtor") initiated this Adversary Proceeding against TIG Romspen US Master Mortgage, LP ("Romspen" or "Lender"), Galleria Loop Note Holder, LLC ("GLNH" or "Borrower"), and BDFI, LLC ("BDFI"). (ECF No. 1). The Court will refer to Romspen, GLNH, and BDFI collectively as the "Defendants."

2.      The subject of this dispute is the extent, priority, and validity of liens on real property located at 1001 West Loop South, Houston, Texas (the "Property") and alleged inequitable conduct of Romspen that the Debtor asserts justifies equitable subordination of Romspen's lien. (ECF No. 23).

3.      In the Debtor's Amended Complaint filed May 13, 2024 (the "Amended Complaint" at ECF No. 23), the Debtor seeks a determination that Romspen's lien on the Property is invalid based on its allegation that a foreclosure sale conducted on September 3, 2019 was not proper. (ECF No. 23, p. 6-7). Alternatively, the Debtor seeks to equitably subordinate Romspen's lien to GLNH and BDFI's liens (or the interest of the other creditors). (ECF No. 23, p. 7). Lastly, the Debtor seeks injunctive relief to prevent a foreclosure sale of the Property by Romspen until the Court determines the validity of Romspen's lien on the Property. (ECF No. 23, p. 8).

4.      Romspen filed its answer to the Amended Complaint on May 20, 2024. (ECF No. 27). On May 20, 2024, Romspen also filed its *Motion for Summary Judgment* (the "MSJ," at ECF No. 28) requesting (1) summary judgment on certain affirmative defenses pled by Romspen and the Debtor's equitable subordination claim, and (2) the entry of a final judgment declaring

Romspen's lien on the Property valid and enforceable and denying the Debtor's request for equitable subordination. The Debtor timely responded (the "Response," at ECF No. 29), Romspen replied (the "Reply," at ECF No. 35), and the Debtor filed a Sur-Reply (the "Sur-Reply," ECF No. 44).

5. Romspen's MSJ asserts that it is entitled to summary judgment based on the following six grounds: (1) judicial estoppel, (2) quasi-estoppel, (3) application of the *Rooker-Feldman* doctrine, (4) that there is no basis under Texas law for rescission of a foreclosure sale involving commercial property, (5) that the Debtor's claim to determine the extent and validity of Romspen's lien is barred by the statute of limitations, and (6) that the Debtor is not entitled to equitable subordination of Romspen lien on the Property.

### A. Bankruptcy Court Jurisdiction and Authority

6. This Court has statutory jurisdiction over the Adversary Proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K) because it involves the administration of the estate and the determination of the validity, extent, or priority of liens.

7. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8. The Bankruptcy Court has authority to adjudicate this matter pursuant to the District Court's Standing Order of Reference.

**B.      Description of the Debtor and Parties to the Adversary Proceeding**

9.      The Debtor is a New York limited liability company. (ECF No. 23, p. 2). The Debtor is owned by Ali Choudhri.[1] (Main Bankruptcy Case No. 24-10119, ECF No. 26, p. 2).[2]

10.      Romspen is an exempted Cayman Islands limited partnership (ECF No. 23, p. 2) and the alleged senior secured lender on the Property. (ECF No. 28, p. 2).

11.      GLNH is a Texas limited liability company (ECF No. 23, p. 2) that allegedly holds a second and third lien on the Property and is also wholly owned by Ali Choudhri. (*See* ECF No. 23 p. 3; ECF No. 28 p. 2, 9).

12.      BDFI, LLC is a New York limited liability company (ECF No. 23, p. 2) that allegedly holds a fourth lien on the Property and is also owned either in whole or in part by Ali Choudhri. (ECF No. 35, Romspen Ex. 55, *Transcript of the Court's April 5, 2024 Hearing on Romspen's Motion for Relief from Stay*, p. 146).

**C.      Summary Judgment Standard and Considerations Regarding the Findings of Fact and Conclusions of Law**

13.      Summary judgment is appropriate if the evidence and other materials before the Court including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)[3]; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Initially, the movant must demonstrate the lack of evidence supporting the nonmovant's case. *Celotex*, 477 U.S. at 323. The burden then shifts to

---

[1] The parties' pleadings and most of the attached exhibits refer to Mr. Ali Choudhri, with "Choudhri" ending with "hri". The Court understood the correct spelling was "Choudri" without the "h". For purposes of this Findings of Facts and Conclusions of Law, and Final Order, "Ali Choudhri" and "Ali Choudri" are deemed to be the same person and will be referred to herein as "Choudhri" or "Ali Choudhri".
[2] ECF references will refer to the adversary docket by default, and any references to the Main Bankruptcy Case will be indicated as above.
[3] Federal Rule of Civil Procedure 56 is made applicable to this Adversary Proceeding via Federal Bankruptcy Rule of Procedure 7056.

the nonmovant to present evidence that there is a genuine issue for trial. *Id*. at 324. When summary judgment is sought on an affirmative defense, the movant must establish that there is no genuine issue of material fact as to *all* of the essential elements of the affirmative defense—only then is judgment warranted in movant's favor. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016)). A party cannot overcome summary judgment with "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quotation omitted). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp. La.*, 234 F.3d 899, 902 (5th Cir. 2000). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex*, 477 U.S. at 323. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The movant—Romspen—has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323 (1986).

14.    The Court considered the pleadings of the parties, the evidence attached to the summary judgment pleadings, deposition testimony (if any), and the affidavits whether specifically referred to herein or not. There have been no objections filed to any of the summary evidence that was submitted by the parties. However, to the extent any objections were filed or otherwise asserted, they are waived or overruled.

15.     The following constitutes the Court's Findings of Fact and Conclusions of Law regarding the MSJ in this Adversary Proceeding. In reaching its findings and conclusions, the Court has considered and weighed the MSJ, Response, Reply, and Sur-Reply and the argument contained therein, and all evidence attached thereto. To the extent deemed necessary, the Court has also conducted its own independent legal research regarding any legal issues.

16.     This Court makes its Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into the Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.

## II.     <u>FINDINGS OF FACT</u>

17.     The Debtor first acquired the Property from 1001 West Loop, LP, on January 18, 2017. (ECF No. 23, p. 2) (Romspen Ex. 13).

18.     Ali Choudhri signed the deed on behalf of 1001 West Loop, LP conveying the Property to the Debtor by special warranty deed recorded in Harris County, Texas on January 26, 2017. (Romspen Ex. 13).

### A.     **Purchasing the MidFirst promissory notes to ultimately acquire the Property**

19.     At the time the Debtor acquired the Property from 1001 West Loop, LP, MidFirst Bank held two promissory notes (the "<u>MidFirst Notes</u>") in a combined amount of approximately $21,954,647.72 that were secured by liens on the Property. (Romspen Ex. 14-17). Two deeds of trust secured the MidFirst Notes: (1) a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on December 12, 2012, and (2) a Second Lien Deed of

Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on August 21, 2014 (collectively, the "MidFirst Deeds of Trust" at Romspen Ex. 14-17).

20.     On or around May 28, 2019, GLNH was formed as a Texas limited liability company. Romspen was appointed as the original sole managing member of GLNH vested with management of GLNH. (Romspen Ex. 19). In connection with the formation, GLNH, Romspen and Ali Choudhri executed a "Member Interest Option Agreement" (the "Option Agreement" at Romspen Ex. 5) which provided Choudhri with the option to obtain Romspen's Member Interest in GLNH. Romspen appointed Choudhri as the Designated Officer and Chief Executive Officer of GLNH to execute necessary documents and perform necessary functions on behalf of GLNH to acquire the Property. (Romspen Ex. 19) (Romspen Ex. 20).

21.     On May 31, 2019, Romspen made an $18,500,000.00 loan to GLNH (Romspen Ex. 1 and 2) to acquire the MidFirst Notes and MidFirst Deeds of Trust. GLNH executed a Promissory Note (the "Romspen Note" at Romspen Ex. 1), and GLNH and Choudhri, a guarantor of the Romspen Note, signed a Loan Agreement (the "Romspen Loan Agreement" at Romspen Ex. 20). GLNH and Choudhri also executed a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing against the Property and a separate Assignment of Leases and Rents. (Romspen Ex. 3 and 4). The Romspen Loan Agreement provided that it was GLNH's "express and unequivocal intention" that the Lender would have a "first priority lien and deed of trust . . . free and clear of any and all other liens, immediately upon Borrower succeeding to ownership of the Property…." (Romspen Ex. 20).

22.     Romspen, Choudhri, and the Debtor formed GLNH to purchase the MidFirst Notes and MidFirst Deeds of Trust and foreclose on the MidFirst Deeds of Trust on the Property and

extinguish the junior liens on the Property. (Romspen Ex. 18) (Romspen Ex. 19).[4] The stated purpose of GLNH was to acquire the Property. (Romspen Ex. 19). Once GLNH acquired the Property by foreclosure, then Romspen would immediately be granted a first lien on the Property. (Romspen Ex. 20).

23.     On May 31, 2019, GLNH did in fact purchase the MidFirst Notes and MidFirst Deeds of Trust. (Romspen Ex. 21). In connection with the purchase, Romspen advanced GLNH the $18,500,000.00 to fund GLNH's purchase of the MidFirst Notes and MidFirst Deeds of Trust. (Romspen Ex. 1). Contemporaneously with the loan and sale agreement, Ali Choudhri, Romspen, and GLNH entered into the Option Agreement that gave Ali Choudhri the right to purchase Romspen's membership interest in GLNH subject to certain conditions precedent. (Romspen Ex. 5). Before Choudhri could exercise the option and become the sole managing member of GLNH, he had to either: (1) pay the loan to GLNH in full; or (2) record a deed of trust, assignment of leases and rents, and security agreement and fixture filing granting Romspen a first priority lien on the Property. (Romspen Ex. 5). As the designated officer for GLNH, Choudhri had the ability and authority to foreclose under the newly acquired MidFirst Notes and MidFirst Deeds of Trust and deliver a first priority lien to Romspen. (Romspen Ex. 20).

**B.     Foreclosure on the MidFirst promissory notes and the Lee-GLNH 2020 Lawsuit**

24.     On September 3, 2019, GLNH, as the owner and holder of the MidFirst Notes and MidFirst Deeds of Trust, conducted a foreclosure sale of the Property (the "September 2019

---

[4] The liens junior to the MidFirst Bank liens allegedly consisted of the following per the Debtor's Amended Complaint (ECF No. 23): (1) Deed of Trust in favor of Kolee 59 Trust recorded on February 8, 2017, securing a debt in the amount of $2,758,600.00; and (2) Deed of Trust in favor of George M. Lee recorded on February 8, 2017, securing a debt in the amount of $2,768,600.00. Copies of the Mid First Bank Deeds of Trust are included in the record at ECF No. 28-16, 28-17. George M. Lee's Deed of Trust is recorded in the Harris County Land Records at RP-2017-55644 (*See* ECF No. 28-6). According to the Debtor's Amended Complaint, the Kolee 59 Trust assigned its lien to BDFI, LLC on or about June 28, 2018 by instrument that was recorded on August 13, 2019. (*See* ECF 23, page 3).

Foreclosure Sale") through Kamelia Namazi-Momin, the trustee that Ali Choudhri selected to conduct the foreclosure. (Romspen Ex. 20, 26, and 27). After the September 2019 Foreclosure Sale, Kamelia Namazi-Momin recorded both trustee deeds. (Romspen Ex. 26-27).

25.     After Kamelia Namazi-Momin recorded the trustee deeds related to the September 2019 Foreclosure Sale, Ali Choudhri delivered the necessary documents to Romspen and exercised his option to become the sole managing member of GLNH. (Romspen Ex. 28). At this point in the transaction in September 2019, Ali Choudhri owned GLNH in its entirety, GLNH owned the Property per the 2019 Foreclosure Sale, and Romspen held a first priority lien on the Property. (ECF No. 28, p.6; Romspen Ex. 29, *Deposition of 1001 WL, LLC (Ali Choudhri)*, dated April 2, 2024, 24:1-5; 99:21-25—100:1-13).

26.     However, in the months following the September 2019 Foreclosure Sale, Kamelia Namazi-Momin recorded as many as six additional substitute trustee's deeds attempting to resolve perceived defects in the original trustee's deeds. (Romspen Ex.'s 30–35).

27.     After the recordation of the substitute deeds, George Lee ("Lee"), a junior creditor whose lien was extinguished by the September 2019 Foreclosure Sale, filed two state court lawsuits challenging the validity of the September 2019 Foreclosure Sale based on the multiple attempts to correct potential deficiencies in the foreclosure sale.

28.     In the second Lee state court lawsuit filed in Harris County, Texas on February 24, 2020, under Cause No. 2020-12442 (the "Lee-GLNH 2020 Lawsuit"),[5] Lee challenged the validity of the September 2019 Foreclosure Sale and original trustee's deeds on multiple grounds, including technical deficiencies and the fact that the original deeds did not contain a grant, sell, and convey

---

[5] The Court was not presented with any evidence indicating final judgment in the first Lee state court lawsuit, and therefore will not consider the first Lee state court lawsuit in its analysis of whether judicial estoppel or collateral estoppel apply. *Contra* Romspen Ex. 6 *with* Romspen Ex. 7, 11, and 12.

clause. (Romspen Ex. 7). The Lee-GLNH 2020 Lawsuit sought a declaration that the September 2019 Foreclosure Sale was defective, void, failed to transfer title, failed to extinguish junior liens, and that Lee had a valid lien on the Property. (Romspen Ex. 7).

29.    In the Lee-GLNH 2020 Lawsuit, the only named defendant was GLNH. (Romspen Ex. 7).

30.    Importantly, at the time Lee filed the Lee-GLNH 2020 Lawsuit attacking the September 2019 Foreclosure Sale, Ali Choudhri was the sole owner and managing member of GLNH and has remained in that position through the filing of this Adversary Proceeding. (Romspen Ex. 28, 29). Thus, during the Lee-GLNH 2020 Lawsuit and ever since that time, Ali Choudhri has been the only person vested with the power to control and make legal decisions for GLNH. (Romspen Ex. 19).

31.    Ali Choudhri, through GLNH, vigorously contested and opposed the allegations in the Lee-GLNH 2020 Lawsuit and argued that the September 2019 Foreclosure Sale was indeed valid. (Romspen Ex. 9). In GLNH's reply to Lee's summary judgment response in the Lee-GLNH 2020 Lawsuit, GLNH argued that it had conducted a valid foreclosure sale and extinguished Lee's junior liens notwithstanding issues with the trustee's deeds. (Romspen Ex. 9) (Romspen Ex. 10). GLNH characterized the issues as simple "clerical errors." (Romspen Ex. 9) (Romspen Ex. 10).

32.    Romspen eventually intervened in the Lee-GLNH 2020 Lawsuit and also filed a motion for summary judgment. (Romspen Ex. 37) (Romspen Ex. 38). Together, GLNH and Romspen successfully obtained a favorable final judgment in the Lee-GLNH 2020 Lawsuit that was affirmed on appeal by the Houston First District Court of Appeals on August 24, 2023. (Romspen Ex. 39) (Romspen Ex. 12).

33.     In the appeal, Lee again argued that the trial court erred because the substitute trustee's deeds were defective and void. (Romspen Ex. 12). GLNH, fully and totally owned and controlled by Choudhri, argued in response and opposition to the appeal that the trial court rightly upheld the foreclosure sale. In its decision, the Texas Court of Appeals found that "the original substitute trustee's deed sufficiently identified the grantor and the grantee and contained operative words of grant" and therefore the September 2019 Foreclosure Sale was valid. (Romspen Ex. 12).

**C.     Connections between GLNH, Ali Choudhri, the Debtor, and Romspen**

34.     GLNH continued to operate the Property following final judgment in the Lee-GLNH 2020 Lawsuit. (Romspen Ex. 40-42). Beginning in May of 2021, GLNH struggled to stay current on its loan obligations to Romspen, and the parties negotiated multiple forbearance agreements. (Romspen Ex. 43-47). During this time, the relationship between Romspen and Ali Choudhri began to sour and ultimately GLNH filed several lawsuits against Romspen. (Romspen Ex. 48-50).

35.     On January 22, 2024, Ali Choudhri, as the owner of GLNH, executed a deed transferring the Property from GLNH back to the Debtor. (Romspen Ex. 51). Ali Choudhri signed the deed pursuant to his role as the sole managing member of GLNH. (Romspen Ex. 51).

36.     On February 2, 2024, Choudhri, as the owner of GLNH, executed a purported rescission of the September 2019 Foreclosure Sale that occurred almost five years prior (the "GLNH Rescission of Foreclosure" at Romspen Ex. 52). The purported GLNH Rescission of Foreclosure was also signed by Ali Choudhri. (Romspen Ex. 52).

37.     On February 6, 2024, four days after executing the purported GLNH Rescission of Foreclosure, Choudhri placed the Debtor into bankruptcy. (Main Bankruptcy Case No. 24-10119, ECF No. 1).

38.     Ali Choudhri signed the Debtor's original petition. (Main Bankruptcy Case No. 24-10119, ECF No. 1).

39.     A month into the main bankruptcy case, the Debtor filed this Adversary Proceeding requesting that the Court determine the validity and extent of Romspen's lien on the Property and, in the alternative, seek equitable subordination of Romspen's lien to GLNH's purported lien. (ECF No. 1; ECF No. 23). The Debtor's complaint and amended complaint largely parrot arguments made by Lee in the Lee-GLNH 2020 Lawsuit (ECF No. 1; ECF No. 23) (Romspen Ex. 7, 9, 10, 12).

40.     Choudhri has owned and controlled GLNH since the date of the exercise of the Option Agreement on September 3, 2019. (Romspen Ex. 28) (ECF No. 35, Romspen Ex. 55, *Transcript of the Court's April 5, 2024 Hearing on Romspen's Motion for Relief from Stay*, p. 137, 145).

41.     Choudhri has owned and controlled the Debtor since the filing of the bankruptcy petition. (Main Bankruptcy Case No. 24-10119, ECF No. 26, p. 2) (ECF No. 35, Romspen Ex. 55, *Transcript of the Court's April 5, 2024 Hearing on Romspen's Motion for Relief from Stay*, p. 13).

III.    <u>CONCLUSIONS OF LAW</u>

   A.    **The summary judgment evidence conclusively establishes that the Debtor is judicially estopped from contesting the validity of the September 2019 Foreclosure Sale and/or Romspen's lien.**

42.     In the Fifth Circuit, federal courts apply federal law in determining whether judicial estoppel is appropriate. *Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 395-96 (5th Cir. 2003) (internal citations omitted); *see also ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 329 (S.D. Tex. 2008) (quoting *Hall*). Federal law governs this Court's determination because judicial estoppel represents a matter of federal procedure and exists to enable the court to "protect itself

from manipulation….” *Hall*, 327 F.3d at 395; *Ergo Science, Inc. v. Martin,* 73 F.3d 595, 599-600 (5th Cir. 1996).

43.     Judicial estoppel is an equitable doctrine that “prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.” *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 347 (5th Cir. 2008) (quotation omitted), *cert. denied* 556 U.S. 1129 (2009); *In re Coastal Plains, Inc.,* 179 F.3d 197, 205–06 (5th Cir. 1999). Judicial estoppel “protect[s] the essential integrity of the judicial process by reducing the risk of inconsistent court determinations.” *Hopkins,* 545 F.3d at 347 (internal quotations omitted).

44.     Applied to this Adversary Proceeding, the doctrine of judicial estoppel prohibits Choudhri from advocating for opposite positions simply by utilizing two distinct legal entities under his control (i.e., first GLNH and now the Debtor). Indeed, “[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.” *Davis v. Wakelee*, 156 U.S. 680, 689 (1895); *see also New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). In this Court’s opinion, it would be nonsensical for the Court to allow an entity owned and controlled by Choudhri (GLNH) to argue for something, and then subsequently allow another entity owned and controlled by Choudhri (1001 WL, LLC, the Debtor) to take an inconsistent position. Allowing such inconsistent legal positions would encourage manipulation of the courts and impact the integrity of the judicial process. Accordingly, the Court holds that the prior legal position taken by

Ali Choudhri as owner and manager of GLNH will bind the Debtor for purposes of judicial estoppel.[6]

45.     There is no mechanical test to establish whether judicial estoppel applies. *See New Hampshire*, 532 U.S. at 750. However, courts generally consider at three factors in determining whether to apply judicial estoppel. First, the position of the party to be estopped must be clearly inconsistent with a prior position. *Id.* Second, the previous court must have accepted the prior position. *Id.* Third, the courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750–51.

46.     Here, the Debtor's assertion that the September 2019 Foreclosure Sale is invalid is clearly inconsistent with GLNH's position in the Lee-GLNH 2020 Lawsuit, where GLNH argued that the foreclosure sale was indeed valid. (Romspen Ex. 9, 10). The state court accepted GLNH's prior position in the Lee lawsuit because it found that Lee had no valid claim "to foreclose on the Property, file notices of lis pendens on the Property, or cloud title to the Property." (Romspen Ex. 11). Finally, the party opposing the Debtor's potentially estopped argument—Romspen— intervened in and was a party to the Lee-GLNH 2020 Lawsuit. (Romspen Ex. 11). Allowing Choudhri to now attack the validity of the September 2019 Foreclosure Sale, using essentially the same arguments as Lee did—*after* Romspen intervened in the Lee-GLNH 2020 Lawsuit and joined with GLNH in defending against the claims asserted by Lee—would certainly be unfair to Romspen. *See New Hampshire*, 532 U.S. at 750-751.

47.     In this Court's opinion, analyzing the three judicial estoppel factors against the evidence before the Court results in a proper application of judicial estoppel in this Adversary

---

[6] See discussion below at paragraphs 48-56.

Proceeding, and therefore the Debtor is estopped from attacking the validity of the September 2019 Foreclosure Sale and/or validity and priority of Romspen's lien.

48. The Debtor's primary argument is that judicial estoppel should not apply because the Debtor was not actually a party to the Lee-GLNH 2020 Lawsuit. The primary issue is whether this Court, in its discretion, may properly apply judicial estoppel to this *Debtor* based on *GLNH's* prior legal arguments, given that both the Debtor and GLNH are owned and totally controlled by the same person—Ali Choudhri.

49. In *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.)*, the Fifth Circuit analyzed a similar situation where a successor entity and the Chapter 7 Trustee attempted to pursue claims against a creditor when those claims had not been disclosed at any point in the bankruptcy case. 179 F.3d 197, 201 (5th Cir. 1999). In *Browning Manufacturing*, Coastal Plains, Inc. filed for bankruptcy after Coastal's owner, Bill Young, failed to turn the struggling equipment distributor around. *Id.* On its schedules, Coastal listed a non-contingent undisputed debt to Browning Manufacturing—Coastal's largest unsecured creditor—in the amount of $1,300,000.00. *Id.* at 203. Coastal's Chief Executive Officer, Wayne Duke, believed that Coastal held a claim valued at up to $10,000,000.00 against Browning, but Coastal never disclosed the claim on its schedules. *Id.*

50. Coastal's reorganization did not proceed smoothly and eventually Coastal's largest secured creditor, Westinghouse, filed a motion to lift stay. *Id.* Browning objected to the lift stay. *Id.* In support of the lift stay motion, Westinghouse and Coastal filed a stipulation as to the value of Coastal's assets and liabilities. *Id.* The stipulation made no mention of the claims against Browning. *Id.* Based on the stipulations, Browning withdrew its objection to the lift stay motion and Westinghouse foreclosed on Coastal's assets. *Id.*

15

51.     After the sale, Westinghouse entered into a consignment agreement to sell Coastal's assets with Industrial Clearinghouse, Inc.—an entity formed by Wayne Duke, the former CEO of Coastal. *Id.* Coastal's employees became employees of the Clearinghouse entity, and the Clearinghouse entity used all of Coastal's software and customer lists. *Id.* Eventually, Clearinghouse purchased all of Coastal's assets from Westinghouse. *Id.* After purchasing all of the assets, Clearinghouse returned to the bankruptcy court, with Coastal now in a Chapter 7 case, and demanded that the Trustee pursue claims against Browning. *Id.*

52.     In defending the adversary proceeding, Browning argued that Clearinghouse and the Chapter 7 Trustee were judicially estopped from asserting the claims because Coastal had not disclosed them as assets at any point in its bankruptcy case. *Id.* at 204. The bankruptcy court allowed the case to go to judgment and Browning appealed on the issue of judicial estoppel. *Id.*

53.     On appeal, the Fifth Circuit concluded that judicial estoppel applied despite the fact that entities different than the Debtor wanted to pursue the claims. *Id.* at 213. Unfortunately, the Fifth Circuit focused on other issues and did not discuss the relationship between the entities in detail, but the decision is clear that judicial estoppel can apply to an entity that is different from the entity which originally took an opposite position in previous litigation. *Id.*

54.     There are other decisions which confirm that this Court may apply judicial estoppel to the facts of this Adversary Proceeding. In *Zapata Gulf Marine Corporation v. Puerto Rico Maritime Shipping Authority*, the Louisiana Eastern District Court pointed out that the doctrine of judicial estoppel is not concerned with the rigorous formalities of privity and strict relationships. 731 F. Supp. 747, 750 (La. E.D. 1990). Judicial estoppel instead is a flexible and discretionary tool that courts may use to preserve the integrity of the federal judicial system. *Id.* Thus, the District Court in *Zapata* applied judicial estoppel to prevent an assignee from making an alter ego

allegation where the assignor had formerly argued that it was not the alter ego of a different entity. *Id.* at 748.

55.     Further, *Austin v. McNamara* is even more applicable to this case. No. 6:05-CV-247, 2007 WL 5787498 (E.D. Tex. Mar. 30, 2007). In that case, Austin filed bankruptcy and listed his ownership value in Sundance Pipeline Inc. as $1,000.00. *Id.* at *2. Five years after his bankruptcy, Austin and Sundance sued McNamara for breach of contract and a variety of fraud claims alleging that McNamara failed to repay a debt to Sundance. *Id.* McNamara filed a motion for summary judgment on the grounds that Austin's representation to the bankruptcy court that Sundance was only worth $1,000.00 barred collection of the debt. *Id.* The District Court agreed as to Austin but analyzed whether judicial estoppel could apply to Sundance. *Id.* at *7. The District Court started by confirming that judicial estoppel does not require privity because it is fundamentally a doctrine about fairness. *Id.* The District Court observed that Austin was the sole shareholder of Sundance and was personally involved in the origination of the debt. *Id.* Further, the evidence established that Austin had knowledge of the debt owed to Sundance at the time of his bankruptcy and failed to disclose it. *Id.* Lastly, the District Court observed that Austin "would reap a windfall without fear of attachment by creditors" if Sundance was allowed to proceed. *Id.* Thus, the Court found that judicial estoppel applied equally to Sundance and that Sundance was barred from collecting the debt. *See also In re DeRosa-Grund*, 567 B.R. 773 (Bankr. S.D. Tex. 2017).

56.     Here, allowing Ali Choudhri to use GLNH to join arms with Romspen to defeat George Lee, lay dormant and do nothing for several years, and then subsequently utilize the Debtor to turn against Romspen by using basically the arguments that Choudhri and GLNH rejected in the Lee-GLNH 2020 Lawsuit (i.e., that the September 2019 Foreclosure Sale was invalid) is

fundamentally unfair. Further, it calls into question the integrity of the judicial system if Ali Choudhri were allowed to systematically attack lenders and eliminate liens on the Property by engaging in a game of shell entities and position flip-flopping. If allowed to proceed, Choudhri would potentially reap a windfall via the Debtor at the expenses of all prior creditors with a lien on the Property. Accordingly, the Court holds and concludes that the summary judgment evidence conclusively shows that the Debtor is judicially estopped from attacking the validity of the September 2019 Foreclosure Sale and/or validity and priority of Romspen's lien. Accordingly, Romspen's MSJ based on judicial estoppel is granted.

> **B.      In the alternative, the summary judgment evidence conclusively establishes that the Debtor is estopped by the doctrine of quasi-estoppel from attacking the validity of the September 2019 Foreclosure Sale and/or Romspen's lien.**

57.     The Court incorporates into its ruling on quasi-estoppel the analysis above regarding judicial estoppel to the extent it also supports quasi-estoppel. Without limiting the foregoing, the Court holds that it is appropriate for GLNH and the Debtor to both be bound by Choudhri's prior legal positions for the limited purposes of judicial estoppel and quasi-estoppel.

58.     Quasi-estoppel "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *In re Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Quasi-estoppel applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez*, 22 S.W.3d at 864. Bankruptcy courts in Texas apply the Texas law of quasi-estoppel. *In re Davidson*, 947 F.2d 1294, 1297-98 (5th Cir. 1991) (reversing and remanding a Texas bankruptcy court decision and applying Texas law in its analysis of quasi-estoppel).

59.     The three elements of quasi-estoppel under Texas law are: (1) the party being estopped acquiesced to or benefited from a position inconsistent with his present position, (2) it would be unconscionable to allow the party being estopped to maintain his present position, and (3) the party being estopped had knowledge of all material facts at the time of the conduct on which estoppel is based. *In re Liao*, 553 B.R. 584, 607 (Bankr. S.D. Tex. 2016); *see also Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.*, 611 F.3d 289, 298 (5th Cir. 2010).

60.     The evidence conclusively establishes that the first element—the party being estopped acquiesced to or benefited from a position inconsistent with its present position—is present. Choudhri has owned and controlled GLNH since the date of the exercise of the Option Agreement on September 3, 2019. (Romspen Ex. 28) (ECF No. 35, Romspen Ex. 55, *Transcript of the Court's April 5, 2024 Hearing on Romspen's Motion for Relief from Stay*, p. 137, 145). Choudhri has also owned and controlled the Debtor since the filing of the bankruptcy petition. (Main Bankruptcy Case No. 24-10119, ECF No. 26, p. 2) (ECF No. 35, Romspen Ex. 55, *Transcript of the Court's April 5, 2024 Hearing on Romspen's Motion for Relief from Stay*, p. 13).

61.     For nearly five years, the Debtor acquiesced to Choudhri and GLNH's assertions that the September 2019 Foreclosure Sale was valid. Romspen extended Choudhri, as the owner of both GLNH and the Debtor, multiple loan forbearance agreements. (Romspen Ex. 43-48). As part of those forbearance agreements, Choudhri repeatedly affirmed the validity and continuity of Romspen's liens and the Loan Documents. (Romspen Ex. 43-48). Choudhri, through his ownership and control of GLNH, repeatedly asserted that the September 2019 Foreclosure Sale was valid. (Romspen Ex. 8) (Romspen Ex. 9). Choudhri cannot now use his ownership and control of the Debtor to take a position that is contrary to and inconsistent with his prior position as the owner of GLNH regarding the September 2019 Foreclosure Sale and Romspen's lien.

62.     The evidence conclusively establishes that the second element—that it would be unconscionable to allow the party being estopped to maintain its present position—exists here. Choudhri—through GLNH—repeatedly affirmed the validity of Romspen's liens. (Romspen Ex. 43-48). Choudhri was only able to exercise his option to acquire ownership of GLNH *after* he recorded a Deed of Trust establishing Romspen's interest in the Property. (Romspen Ex. 5). For Choudhri to record the Deed of Trust, exercise his option to acquire ownership of GLNH, repeatedly affirm the validity of Romspen's lien, convey the Property to the Debtor, and then use his control of the Debtor to challenge the validity of Romspen's lien and leave Romspen unsecured would be unconscionable.

63.     Finally, the evidence conclusively establishes that the third element—the party being estopped had knowledge of all material facts at the time of the conduct on which estoppel is based—is present. The Debtor, through Choudhri, was aware of all material facts from September of 2019 through the filing of this Adversary Proceeding. Choudhri, through GLNH, was involved in repeated litigation related to the September 2019 Foreclosure Sale. (Romspen Ex. 6) (Romspen Ex. 7). The Debtor has never taken action to contest or repudiate the actions of Choudhri and GLNH, despite being aware of litigation related to the September 2019 Foreclosure Sale. The Debtor cannot be said to have lacked knowledge of the September 2019 Foreclosure Sale and related litigation when the Debtor's principal and owner was instigating that litigation—albeit through a separate entity. (*See* Lead Case No. 24-10119, ECF No. 26, p. 2) (Romspen Ex. 6) (Romspen Ex. 7).

64.     Having reviewed the evidence and determining that the three elements of quasi-estoppel have been conclusively established, the Court holds and concludes that the Debtor is barred by quasi-estoppel from attacking the validity of the September 2019 Foreclosure Sale and/or

validity and priority of Romspen's lien. Accordingly, Romspen's MSJ based on quasi-estoppel is granted.

### C.   The *Rooker-Feldman* doctrine does not apply to this Adversary Proceeding.

65.   The *Rooker-Feldman* doctrine is a judicially created doctrine that generally restricts a federal court from reconsidering final orders from a state court. The Court agrees with the Debtor that Romspen's argument regarding application of the *Rooker-Feldman* doctrine is overly broad and contrary to applicable law. The United States Supreme Court defined the scope of the *Rooker-Feldman* doctrine as follows:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobile Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280, 284 (2005). The Fifth Circuit has echoed the Supreme Court's emphasis that the *Rooker-Feldman* doctrine is a "narrow jurisdictional bar" that "applies only to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Miller v. Dunn*, 35 F4th. 1007, 1010 (5th Cir. 2022).

66.   Based on the evidence before the Court, neither Debtor nor GLNH were "losers" in the Lee-GLNH 2020 Lawsuit; therefore, the *Rooker-Feldman* doctrine does not apply to this Adversary Proceeding. Accordingly, the Court holds and concludes as a matter of law that the *Rooker-Feldman* doctrine does not apply to this Adversary Proceeding. Accordingly, Romspen's MSJ based on application of the *Rooker-Feldman* doctrine is denied.

D.     **There is no basis under Texas law for statutory rescission of a foreclosure sale involving commercial property.**

67.     Section 51.002 of the Texas Property Code governs non-judicial foreclosure sales of real property, and it does not contain a provision for rescinding the foreclosure of a deed of trust or similar voluntary lien against commercial real property. TEX. PROP. CODE § 51.002. By contrast, § 51.016 of the Texas Property Code contains detailed statutory requirements for rescinding a foreclosure sale of "residential real property." TEX. PROP. CODE § 51.016. Indeed, § 51.016 of the Texas Property Code specifically and unequivocally provides in subsection (a) that it "applies only to a nonjudicial foreclosure sale of ***residential real property*** conducted under Section 51.002." *Id.* (emphasis added). The Debtor has not cited to—and the Court did not find any case law— providing that a nonjudicial foreclosure sale of commercial property could be rescinded under this statute or any other Texas statute absent a judicial determination.

68.     The Court's interpretation is further supported by the legislative history. In an early draft of § 51.016(a) of the Texas Property Code, the language read "This section applies only to a nonjudicial foreclosure sale conducted under Section 51.002." 2015 Tex. H.B. No. 2066, 84th Leg., R.S. (Introduced Feb. 27, 2015). The enacted version of § 51.016(a) reads: "This section applies only to a nonjudicial foreclosure sale of residential real property conducted under Section 51.002. . . ." TEX. PROP. CODE § 51.016(a); *see also* 2015 Tex. H.B. No. 2066, 84th Leg., R.S. (Adopted June 16, 2015). The Legislature's decision to alter the statute and restrict § 51.016's application to only residential foreclosure sales must be given meaning. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose.").

69.     Based on the foregoing, the Court holds and concludes as a matter of law that there is no statutory basis for a party's rescission of a foreclosure sale involving commercial property

22

without a judicial determination; therefore, the GLNH Rescission of Foreclosure executed and recorded in the deed records is invalid and has no legal effect under Texas law. Accordingly, Romspen's MSJ related to the GLNH Rescission of Foreclosure is granted.

> **E.** **The MSJ on the statute of limitations is mooted by the Court's holding on the application of judicial estoppel and/or quasi-estoppel, or alternatively, the Court is unable to determine if the claims should be barred by the statute of limitations.**

70.     Romspen asserts that the Debtor's attack on the validity of Romspen's lien—a specific type of adversary proceeding enumerated in Rule 7001(2) of the Federal Rules of Bankruptcy Procedure—is really a wrongful foreclosure claim under Texas law. (ECF No. 28, p. 18). Romspen points to language in the Debtor's complaint asserting that "the sale…was a nullity and failed to transfer title." *Id.*

71.     According to Romspen, if the Debtor's action is based on wrongful foreclosure, the Debtor needed to assert it within either two or four years following the September 2019 Foreclosure Sale. *Id.*

72.     Romspen argues that the Debtor had two years to bring any claim asserting that, under the Original Trustee's Deeds of the Corrections Deeds, the Trustee did not have proper authority to conduct the September 2019 Foreclosure Sale. *Id.* Romspen also argues that the Debtor only had four years to bring a wrongful foreclosure claim on any other alleged putative defect in the September 2019 Foreclosure Sale. *Id.* In other words, according to Romspen, any theory that its deeds/lien are invalid based on a potential wrongful foreclosure needed to be brought by September of 2023. *See id.*

73.     The Debtor counters and argues that Romspen's statute of limitations defense is inapplicable because the September 2019 Foreclosure Sale and the trustee's foreclosure deeds related thereto were void and ineffective to pass title.

74.     First, given the Court's rulings above on judicial estoppel and quasi-estoppel, Romspen's statute of limitations argument is moot. Alternatively, based on the summary judgment evidence before the Court it was unclear from the Court's perspective when the applicable statute of limitations started running. Was it from the date of the September 2019 Foreclosure Sale, the date of the filing of one or more of the substitute trustee's deeds between September 2019 and December 27, 2019, the date of the filing of the Lee-GLNH 2020 Lawsuit, or some other date? The Court simply cannot make a determination on the statute of limitations based on the summary judgment evidence before it.

75.     Based on the foregoing, the Court holds and concludes as a matter of law that Romspen's MSJ on limitations is moot, or alternatively, there are fact issues regarding the commencement date of the running of the statute of limitations and thus the Court is unable to determine at this time if the Debtor's claims are barred by the applicable statute of limitations. Accordingly, Romspen's MSJ based on the statute of limitations is denied.

**F.     The summary judgment evidence conclusively establishes that equitable subordination is not appropriate.**

76.     Debtor's Amended Complaint asserts that Romspen's lien should be equitably subordinated pursuant to 11 U.S.C. § 510(c), based on Romspen's alleged inequitable conduct. (ECF No. 23, p. 7)(Choudhri Declaration, Debtor Exhibit C at ECF 29).

77.     The Fifth Circuit has established a three-prong test to identify those situations and circumstances where equitable subordination is appropriate: (1) the claimant must have engaged in inequitable conduct; (2) the conduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant; and (3) the invocation of equitable subordination must not be inconsistent with the Bankruptcy Code. *In re U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994); *see also In re Life Partners Holdings, Inc.*, 926 F.3d 103,122 (5th Cir. 2019) (applying the

24

three-part test). Equitable subordination is a measure used only sparingly, and the Fifth Circuit has largely confined equitable subordination to three general situations: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; or (3) when a third party actually defrauds other creditors. *U.S. Abatement Corp.*, 39 F.3d at 561.

78.     The Debtor alleges that Romspen (1) required GLNH to use Romspen's attorney, (2) directed activities leading to the September 2019 Foreclosure Sale, (3) acted on behalf of GLNH, (4) did not credit a proper bid on a separate property, and (5) orchestrated the transactions on the Property for its benefit and to the detriment of other creditors. (ECF No. 23, p. 7 and ECF 29).

79.     Of the three situations set forth above where equitable subordination might apply under Fifth Circuit case law, the only potentially applicable situation to the current case is the third situation—a third party defrauding other creditors. The first and second situations discussed by the Fifth Circuit in *U.S. Abatement Corporation*—where a fiduciary of the debtor misuses his position to the disadvantage of other creditors or when a third party controls the debtor to the disadvantage of other creditors—clearly do not apply because Romspen did not allegedly control the Debtor. Romspen allegedly controlled GLNH. In any event, even if the allegations were committed against the Debtor, the Court finds and concludes that such allegations even if taken as true do not justify equitable subordination of Romspen's lien.

80.     The allegations in the Amended Complaint and the Debtor's summary evidence suggest that Romspen might have breached agreements between Romspen and GLNH by failing to advance funds or approve easements and/or leases, that Romspen was involved in certain transactions and exercised or asserted contractual rights, that Romspen and the and/or that

Romspen may have not properly applied certain credits against the debt owed to Romspen, but such allegations—even if they were all true and the Debtor submitted summary judgment evidence proving such allegations (which it did not)—they simply do not rise to such a level that equitable subordination would be appropriate. In other words, the summary evidence, viewed in the light most favorable to the Debtor, does not establish the Romspen actually defrauded other creditors and should therefore be equitably subordinated.

81.     Based on the foregoing, the Court finds that the Debtor's evidence and credible allegations provide no legally valid basis for equitable subordination of Romspen's lien. Accordingly, the Court grants Romspen's MSJ and finds as a matter of law that the Debtor's request for equitable subordination should be denied.

## IV.   CONCLUSION

82.     The summary judgment evidence before the Court establishes that there is no genuine issue of material fact that would prevent the Court from applying judicial estoppel to the Debtor's claims as a matter of law. For the reasons set forth herein, the Court therefore finds that application of judicial estoppel is appropriate, and the Debtor is judicially estopped from making any legal arguments attacking the validity of the September 2019 Foreclosure Sale and/or challenging the validity of Romspen's lien on the Property based on the September 2019 Foreclosure Sale.

83.     In addition (or alternatively), the Court finds that the three elements of quasi-estoppel have been conclusively established by the summary judgment evidence, and the Debtor is therefore estopped under the doctrine of quasi-estoppel from making any legal arguments attacking the validity of the September 2019 Foreclosure Sale and/or challenging the validity of Romspen's lien on the Property based on the September 2019 Foreclosure Sale.

84.     The Court further finds that, for the reasons set forth above, the *Rooker-Feldman* doctrine does not apply to this Adversary Proceeding.

85.     The Court further finds that, for the reasons set forth above, there is no basis under Texas law for statutory rescission of a foreclosure sale involving commercial property.

86.     The Court further finds that, for the reasons set forth above, the statute of limitations affirmative defense is moot or, alternatively that fact issues remain regarding the statute of limitations.

87.     The Court further finds that, for the reasons set forth above, the Debtor has not provided legally sufficient summary judgment evidence to establish that equitable subordination of Romspen's lien is justified.

**BASED ON THE FOREGOING, IT IS THEREFORE,**

**ORDERED** that Romspen's Motion for Summary Judgment based on the doctrine of judicial estoppel is GRANTED and the Debtor is estopped from attacking the validity of the September 2019 Foreclosure Sale and/or validity and priority of Romspen's lien. It is further

**ORDERED** that Romspen's Motion for Summary Judgment based on the doctrine of quasi-estoppel is GRANTED and the Debtor is estopped from attacking the validity of the September 2019 Foreclosure Sale and/or validity and priority of Romspen's lien. It is further

**ORDERED** that Romspen's Motion for Summary Judgment based on the Rooker-Feldman doctrine is DENIED. It is further

**ORDERED** that Romspen's Motion for Summary Judgment on the grounds that the rescission of the foreclosure sale is improper under Texas law is GRANTED. It is further

**ORDERED** that Romspen's Motion for Summary Judgment on the grounds that Debtor's claims are barred by the applicable statute of limitations is DENIED. It is further

**ORDERED** that Romspen's Motion for Summary Judgment in its favor on the Debtor's equitable subordination claim is GRANTED.

# # #